(Decided December 21st, 1898.)

---

ELLEN J. O. PHINNEY et al. *vs.* THE TRUS-
TEES OF THE SHEPPARD AND ENOCH
PRATT HOSPITAL et al.

> *Constitutional Law— Title of Statute—Changing Name of*
> *Corporation by Act of Legislature—Right to Alter*
> *Charters—Impairing Obligation of Contract.*

The title of the Act of 1898, ch. 17, was " An Act to change
the name of the trustees of the Sheppard Asylum, incor-
porated . . . by the Act of 1853, ch. 274, as amended by the
Act of 1886, ch. 9." The body of the Act, after a preamble,
provided that the name of the trustees of the Sheppard

Asylum should be changed to the trustees of the Sheppard and Enoch Pratt Hospital, and that the corporation by the new name should hold all the property, enjoy all the rights, and possess all the powers which were possessed by or conferred upon it by its former name, and shall hold in like manner all the property which it might acquire under said change of title. *Held,* that the act was not in violation of the Constitution, Art. 3, sec. 29, which provides that the subject of every law shall be described in its title, because none of the clauses of the Act added anything that would not have resulted by operation of law from the mere change of the corporate name.

At the time when the charter of the defendant corporation was granted by the Legislature (in 1853) the Constitution provided that all charters might be altered from time to time or repealed, and defendant's charter also declared that the General Assembly might at any time alter or amend that Act. *Held,* that the Act of 1898, ch. 17, changing the name of the corporation with its assent, was valid and did not impair the obligation of the contract, since it was not only within the reserved power of the Legislature but had been assented to by the corporation, the other party to the contract.

One who is not a party to a contract cannot object that an Act of the Legislature impairs its obligation.

Property was devised to a corporation upon condition that it procure the passage of an Act of the Legislature changing its corporate name, and there was an alternative remainder over in case such change was not made. The change was made by the Legislature with the assent of the corporation. *Held,* that the alternative devisees not being parties to the contract contained in the charter had no standing to allege that the Legislature did not have power to change the corporate name.

Appeal from a decree of the Circuit Court No. 2 of Baltimore City (SHARP, J.).

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, BOYD and PEARCE, JJ.

*E. J. D. Cross* (with whom was *Abner McKinley* on the brief), for the appellants.

*Wm. Pinkney Whyte* and *Francis T. Homer*, for the appellees.

McSHERRY, C. J., delivered the opinion of the Court.

Having decided in the preceding case that no trust was, or was intended to be, created by the residuary clause of Mr. Pratt's will, it remains for us now to consider the contention of the alternative residuary legatees and devisees. This contention is that the *Act of Assembly of 1898, ch. 17*, changing the name of the Sheppard Asylum to the Sheppard and Enoch Pratt Hospital is unconstitutional and void; that consequently the condition upon the happening of which the property disposed of by the residuary clause was to vest in the Sheppard Asylum, did not come to pass, and that therefore the alternative legacy and devise in the same clause took effect and the estate devolved upon these legatees and devisees, the appellants in this case. It is insisted that this statute is invalid because, *first*, it violates *sec. 29, Art 3*, of the Constitution of Maryland; and because, *secondly*, it conflicts with *sec. 10, Art. 1*, of the Constitution of the United States.

The title of *the Act of 1898, ch. 17*, is in these words: " An Act to change the name of The Trustees of the Sheppard Asylum, incorporated by the General Assembly of Maryland by the Act of 1853, ch. 274, as amended by the Act of 1886, ch. 9." There are two enacting sections preceded by a brief preamble. The preamble recites the original incorporation. It then alludes to the great interest which Mr. Pratt manifested in the management of the institution, and declares that the purpose of the statute is to carry out the suggestion contained in his will with reference to a change of the name of the body corporate. Then follows section one containing the effective, affirmative enactment changing the original name of " The Trustees of the Sheppard Asylum " to " The Trustees of the Sheppard and Enoch

Pratt Hospital," and prescribing that the corporation by the new name shall hold all the property, enjoy all the rights and possess all the powers and functions which were possessed by or conferred upon it under its former name, " and shall hold in like manner all property and estate which it shall acquire by will or otherwise under said change of title hereby made." Then comes section two providing that the Act shall take effect from the date of its passage.

The provision of the State Constitution which is relied on to defeat the enactment is in these words: "And every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title." This section has been before this Court a great number of times. It has been invariably held to mean that the title shall sufficiently describe the subject of the legislation, but that it need not give an abstract of the contents of the Act. The primary object of the provision undoubtedly is to exclude all foreign, irrelevant or discordant matter from a statute and to confine the statute to the single subject disclosed in the title. *Davis* v. *The State,* 7 Md. 151; *Mayor &c.* v. *Reitz,* 50 Md. 579; *State* v. *Norris,* 70 Md. 91; *Trustees &c.* v. *Manning,* 72 Md. 133; *Scarf* v. *Tasker,* 73 Md. 378. A casual glance at the body of the Act under consideration will reveal its absolute and exact accordance with the title. It is true there are certain recitals in the preamble, but strictly speaking the preamble is no part of the statute, though it may be resorted to in explanation of the enacting clauses whenever the meaning of the latter is doubtful. *Lucas et al.* v. *McBlair et al.,* 12 G. & J. 17-18. But a preamble contains no legislation and therefore no matter what its statements may be they are not parts of the subject enacted into law. The enacting clause follows but does not precede the preamble, and whilst the latter may disclose the reasons that induced the Legislature to adopt the Act, it obviously forms no part of that which *is* enacted. Even if it should be out of harmony with the body of the Act, forming, as it does, no part of the statute, the statute cannot be said to con-

tain foreign and discordant matter not disclosed in the
title. But we do not regard the recitals, even if they
formed part of the statute, as at variance with the subject
named in the title, because at most, as already remarked,
they simply state the reasons that influenced the action
of the Legislature.

Nor are the clauses which are contained in the body
of the statute and which declare that the corporation
by the new name shall hold all the property and enjoy
all the rights and possess all the powers which were
possessed by or conferred upon it under its original
name, such foreign and discordant matter as to expose
the Act to the criticism that it contains provisions not
disclosed in its title. These clauses add nothing to the
powers formerly possessed and are merely declaratory
of a result that would have followed a change in the
name though they had been wholly omitted from the
Act; because under its new name all of the original
rights, privileges and liabilities would have remained
unaffected by the change of its name. *7 Am. & Eng.
Ency.* (2nd Ed.) 686. The identity of the corporation
was not altered—it continued to be, under the new
name, precisely the same corporate body that it for-
merly was, with exactly the same and no greater powers.
The declaration that the corporation " shall hold in like
manner all property and estate which it shall acquire by
will or otherwise under said change of title hereby
made " did not enlarge its authority to take or to hold
property. By its original charter it was made " able
and capable in law to acquire property, real, personal
and mixed, by gift, devise or purchase, and to hold,
sell and dispose of the same," without limitation as to
amount or value. None of the clauses following the
actual change of the name in the first section of the
Act added anything that would not have resulted by
operation of law from the naked change of the corporate
name; and so the section cannot be said to contain ex-
traneous matter because these clauses are embodied
in it.

The second objection is that the Act is repugnant to

the Federal Constitution. When the original charter of the Sheppard Asylum—the *Act of 1853, ch. 274*—was granted, the Constitution of Maryland adopted in eighteen hundred and fifty-one was in force. By *section 47 of Article 3* of that Constitution it was provided that "corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes, and in cases where, in the judgment of the Legislature, the object of the corporation cannot be attained under general laws. *All laws and special acts pursuant to this section may be altered from time to time or repealed.*" This provision was intended to be, and as far as language could make it so, was a clear and explicit limitation upon the power of the General Assembly to pass thereafter any Act of incorporation not subject to repeal or amendment by the Legislature. Upon the adoption of that Constitution, every charter thereafter granted was subject to the paramount provision of the organic law, which was binding on the Legislature and the corporation alike. The right of the State to repeal or alter a charter was an express condition upon which the grant was made in every instance after the Constitution of 1851 became effective, and an acceptance of the grant was an unequivocal, as it was an irrevocable, acceptance of that condition. In this particular charter by the ninth section it is expressly declared that "the General Assembly may at any time alter or amend this Act." This right to alter or amend embodied in the Constitution and written in the charter became a term or stipulation in the contract to which the State and the incorporators were the only parties. The right of the State under these circumstances to change the charter of a body corporate has been distinctly and finally settled by this Court in *State* v. *N. C. Ry. Co.*, 44 Md. 164; *Am. Coal Co.* v. *Con. Coal Co.*, 46 Md. 22; *Appeal Tax Court* v. *N. C. Ry. Co.*, 50 Md. 419; *Jackson* v. *Walsh*, 75 Md. 304; and by the Supreme Court of the United States in *Shields* v. *Ohio*, 95 U. S. 324; and *Sinking Fund Cases*, 99 U. S. 720. The State having not only under the organic law but under the

explicit terms of the contract contained in the charter, the unqualified authority to alter or amend the original Act of incorporation, passed the *Act of 1898, ch. 17,* simply changing the name of the corporation, and this Act was assented to and accepted by the Trustees of the Sheppard Asylum.  Even if there had been no power reserved to make such an amendment, still, if made by the State and accepted by the corporation it would have been perfectly valid.  *The Regents &c.* v. *Williams,* 9 G. & J. 416; *Jackson* v. *Walsh, supra,* 316.

But laying all this aside, it is obvious and certain that if the parties to a contract—the State and the body corporate in this instance—see fit to modify or change that contract, and accordingly do change it by a mutual concurrence, as was done by the passage of the *Act of 1898, ch. 17,* by the State, and the acceptance of that Act by the body corporate, not only is there no impairment of the obligation of the original contract; but even if there were, or could be under such conditions, no one other than the *parties* to that contract could invoke the provisions of the Federal Constitution to uphold it.  And this the Supreme Court has recently declared in *Williams* v. *Eggleston,* 170 U. S. 309.  Speaking for the Court, MR. JUSTICE BREWER said: " The parties to a contract are the ones to complain of a breach, and if they are satisfied with the disposition which has been made of it and of all claims under it, a third party has no right to insist that it has been broken."  Clearly, therefore, these alternative residuary legatees and devisees, who are not parties to the contract contained in the charter, and who were only to take under the will in the event that the Legislature did *not* change the name of the corporation, have no standing to insist that, though the Legislature *did* change the name, it had no power to do what it did do; and that they are, consequently, entitled to the property.

We hold, then, that the *Act of 1898, ch. 17,* is not invalid for any of the reasons assigned, and as the other questions involved have been disposed of in the pre-

ceding case, the decree in so far as it affects these appellants will be affirmed.

*Decree affirmed with costs in this Court to be paid out of the fund.*

(Decided December 21st, 1898.)