SAMUEL LIBERTO, et al *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 47, October Term, 1941.]

*Decided December 4, 1941.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Vincent L. Palmisano,* for the appellants.

*Charles G. C. Evans, City Solicitor* and *Allen A. Davis* and *Harry S. Kruger, Assistant City Solicitors of Baltimore City* for the appellees, Mayor and City Council of Baltimore, and City Comptroller.

*William C. Walsh, Attorney General* for the appellee, Police Commissioner.

*Julian de Bruyn-Kops, Jr., amicus curiæ.*

MARBURY, J., delivered the opinion of the Court.

This is a bill of complaint filed in the Circuit Court of Baltimore City by certain owners, lessees, occupants, and licensees of outside stalls or stands within the limits of that part of Lexington Market in the City of Baltimore, which is on Eutaw Street from Saratoga Street to Fayette Street, and on Lexington Street from Eutaw Street to Howard Street. The bill (filed also on behalf of all other similarly situated persons who may come in) shows the respective situations of the complainants, each of them being a dealer in certain articles in Lexington Market, and a licensee of stalls or stands therein, for which various sums were paid, running from $1,250 to $4,500. Prior to the passage of Ordinance No. 126 of the Mayor and City Council of Baltimore, approved on February 19, 1940, these appellants paid an annual rental and a license fee to the City, which was fixed by contract between the City and the original owners. Some of the appellants originally purchased from the City, and some

acquired their rights from third persons by purchase or inheritance. Ordinance No. 126 repealed and re-enacted Section 129 of Article 27 of the Baltimore City Code, changed the limits of Lexington Market, and prohibited the Board of Estimates from issuing minor privilege permits for stalls or stands on both sides of Eutaw Street from Saratoga Street to Fayette Street, and on both sides of Lexington Street from Eutaw Street to Howard Street. The ordinance further provided that the licensees and occupiers of stalls or stands in the space eliminated by the ordinance should be given preference as licensees and occupiers of vacant stalls or stands within the newly established limits.

Pursuant to the ordinance, the Mayor and City Council notified the appellants that their licenses expired on April 30, 1941, and directed them to apply without delay to the Superintendent of Markets for licenses, upon which the appellants respectively made application for renewals of their licenses, but were informed that such licenses could not be renewed for the present locations. They were offered locations in the bed of Louisiana Avenue, a dead end Street running on the north side of Lexington Market from Eutaw Street to Pearl Street. The appellants allege that they have built up a valuable and profitable business at their present stalls, and they would lose a large part of their trade and custom, if they had to move, with the likelihood that they would probably be forced to discontinue their respective businesses. It is further alleged in the bill that the Ordinance No. 126 is illegal and void because its object and contents are not expressed or described in the title, as required by Section 221 of the City Charter, because its title fails to give a clue to what amendments are made to Section 129 of. Article 27, because it prohibits minor privilege permits for stalls and stands in the prohibited area and none of the stalls and stands were ever occupied under minor privilege permits, but were under licenses, because the property rights of the appellants are not minor privileges, because the ordinance attempts to limit minor

privileges in public highways, which power is conferred upon the Board of Estimates alone, because the ordinance is not a lawful and valid exercise of the police power, and because it violates and impairs the contracts made by the Mayor and City Council with the appellants.

The appellants allege that unless they select the new locations on Louisiana Avenue, the City will take procedings to forfeit their rights, that the Commissioner of Police has been notified to enforce the same, and they will suffer irreparable and immediate loss and damage, unless injunctions are issued against the Mayor and City Council and the Commissioner of Police restraining them from interferring with the appellants, and unless the City Comptroller is directed to issue licenses to them for the stalls and stands now occupied by them.

On this bill of complaint an injunction was issued with liberty to move for a dissolution on five day's notice. The appellees answered, and the Junior Association of Commerce, Incorporated, was permitted to appear as amicus curiæ in favor of the validity of the ordinance. The appellees moved for dissolution of the injunctions, the case was heard in open court, testimony was taken, and a decree was filed dissolving the injunctions and dismissing the bill. From this decree the appeal here was taken.

The record shows that the validity of the ordinance is attacked because of what is claimed to be a defective title, because it impairs the rights of the appellants, and because it is not a proper exercise of the police power. We will consider these questions in order.

Section 221 of the Baltimore City Charter codified as Section 221 of Article 4, Code of Public Local Laws of Maryland 1930 provides in part, "Every ordinance enacted by the City shall embrace but one subject, which shall be described in its title, and no ordinance shall be revived, amended, or re-enacted by mere reference to its title, but the same shall be set forth at length as in the original ordinance." This provision is similar to Section 29 of Article 3 of the Constitution of Maryland frequently construed by this court. That provision of the Constitution

sets out in part that "* * * every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title; and no law, or section of law, shall be revived or amended by reference to its title or section only." The objection to the title of the ordinance is not that it fails to disclose all the details embodied in the enactment. That, of course, is not required either of the title to a statute or the title to an ordinance. *City of Baltimore v. Stewart*, 92 Md. 525, 48 A. 165; *City of Baltimore v. Wollman*, 123 Md. 310, 91 A. 339. The objection is that the title goes beyond the reference to the number of the section of the City Code, which it is proposed to repeal and re-enact, and sets out. the respect in which such amendment is to be made. That the words so added are misleading, and do not properly describe the body of the ordinance. These words in the title, which are objected to, are "defining the limits of Lexington Market and prohibiting the issuance of minor privilege permits for stalls, benches, etc., on Eutaw Street from Saragota Street to Fayette Street and on Lexington Street from Eutaw Street to Howard Street." This title adequately describes just what the ordinance does. The appellants say that the purpose of prohibiting the issuance of minor privilege permits is set out in the body of the ordinance, and that this changes its character. The words setting out this purpose are "for the purpose of facilitating the free flow of traffic within the area hereinafter described, the Board of Estimates shall not issue, etc." It is contended that this makes the ordinance a traffic regulation, which cannot be ascertained from an examination of its title, and the argument is made that the title is, therefore, misleading.

We do not so construe the ordinance. It is concerned entirely with the subject of Lexington Market, its boundaries, the restriction of these, and the necessary prohibitions for the issuance of further permits outside of the new and more limited area. It was not necessary to insert in the ordinance the reason actuating its passage, but the fact that the City Council thought that the passage

of such an ordinance would facilitate the free flow of traffic or said so, does not make the ordinance any less one regulating the market. The reason for the passage of the ordinance is not a necessary part of the enactment. If the things done are properly described by the title, the purpose of the City Council in so enacting, is not reviewable by the court, whether it is stated or not. The City has ample power to pass ordinances regulating markets, and the title of an ordinance, exercising that power, which adequately describes the subject, is not misleading merely because the reason for such regulation is given in the body of the ordinance and is not mentioned in the title.

The second ground of attack on the ordinance is that the appellants have valuable rights in the priority given to renew their stalls or stands, which rights are at least equal to those of automobiles, who are being allowed to park in the area now occupied by them. That by not making both the subject of similar legislation, the appellants are denied the equal protection of the law. This contention, however, overlooks the essential fact that the occupancy of the streets by market stalls and stands is a right "subject to such changes and modifications in the market, during its existence, as the public needs may ecquire." *Rose v. Mayor, etc., of Baltimore,* 51 Md. 256, 34 Am. Rep. 307. The whole subject was recently considered in a case involving the stalls in the Bel Air market in Baltimore City, and this court in that case (*Baltimore v. Ercolano,* 170 Md. 341, 184 A. 164, 167) said: "What has been 'rented or hired,' and licensed by the comptroller, is an exclusive right to a particular use of the site and the stall on it, ' for one year and no longer,' transferable and renewable from year to year with the approval of the comptroller, during the existence of the market."

The appellants, notwithstanding the considerable sums of money paid for these stalls and stands, have acquired nothing more than the right to occupy the space allotted them by the City under the City ordinances, subject to the right of the City to use that space for other purposes

at any time it sees fit to abandon the whole or any part of the market. The purpose for which the market is abandoned is immaterial provided it is within the power of the City to use the space in the way intended.

The objection that the ordinance is not a proper exercise of the police power, therefore, dove-tails into the other objection that the rights of the appellants are impaired. Even more substantial rights than the appellants have in the stalls and stands would be subject to the police power of the City. Neither a Legislature nor a City Council can by legislation divest itself of the power to protect the lives, health, morals, comfort, and general welfare of the citizens of the community. That right and that duty always remains, and no individual agreement, or right, or contract can stand in the way. *Jones Hollow Ware Company v. Crane et al., State Board of Prison Control,* 134 Md. 103, 106 A. 274, 3 *A. L. R.* 1658.

Neither have the courts anything to do with the necessity or reasonableness of the means adopted to protect the health, welfare, and morals of the community unless the legislation enacted is arbitrary, oppressive, or capricious. *Mayor and City Council v. Wollman,* 123 Md. 310, 91 A. 339; *Spann v. Gaither,* 162 Md. 1, 136 A. 41, 50 *A. L. R.* 620; *Wyatt v. State Roads Commission,* 175 Md. 258, 1 A. 2d 619. The subject is legislative in the first instance, and a question of legislative policy. It may be true as suggested, that automobiles obstruct the streets as much as market stalls, although perhaps the obstruction is not so continuous or so lengthy. However that may be, the courts are not the proper tribunals to decide such a question. That is a matter for the legislative branch of the government, resting entirely in its discretion, so long as that discretion is not exercised arbitrarily or capriciously. The City Council has an undoubted right to remedy conditions surrounding the markets of the City by restricting the markets. If the remedies proposed are not effective, or if they do not achieve the results desired, the remedy is not in the court. It lies in an appeal to the legislative body to change its policy.

We are unable to find that the ordinance is invalid for any of the reasons complained of. It seems to us to be an enactment of the City Council, well within the authority given to that body, and not subject to attack on any grounds, which would justify a court in declaring it void.

*Decree affirmed. Costs to appellees.*